IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY<br><br>    Plaintiff,<br><br>v.<br><br>TAYLOR R. ROY,<br><br>    Serve :<br>    6812 Linkside Court<br>    Charlotte, NC 28277<br><br>    Defendant. | Case No. 24-cv-988 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff The Cincinnati Insurance Company, by counsel, states as follows in support of its Complaint for Declaratory Judgment against Defendant Taylor R. Roy:

**PARTIES**

1. Plaintiff The Cincinnati Insurance Company ("Cincinnati") is a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Ohio. At all times relevant hereto, Cincinnati was licensed to conduct the business of insurance in the State of North Carolina.

2. Defendant Taylor R. Roy ("Roy") is a natural person residing in the State of North Carolina and is a citizen of the State of North Carolina.

**JURISDICTION AND VENUE**

3. Cincinnati incorporates by reference paragraphs 1 and 2 above as if fully restated

1

herein.

4. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and 2202 regarding an actual controversy between Cincinnati and Roy as to Cincinnati's obligations to Roy under two insurance policies Cincinnati issued to Roy.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between Cincinnati and Roy, and the amount in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars ($75,000).

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 as Roy resides in the Western District of North Carolina and a substantial part of the events or omissions giving rise to the claim occurred in the Western District of North Carolina.

## FACTS

### The Lawsuit

7. Cincinnati incorporates by reference paragraphs 1 through 6 above as if fully restated herein.

8. On or about June 27, 2024 Jennifer Luske ("Luske") filed a lawsuit against Roy in the Superior Court of Mecklenburg County, North Carolina, styled *Jennifer Luske v. Taylor Regard Roy*, Case No. 24CV029590-590 (the "Underlying Lawsuit"). A copy of the Complaint is attached as Exhibit 1.

9. The Underlying Lawsuit, laid forth in more detail below, alleges that Roy physically assaulted Luske at Roy's residence in Mecklenburg County, North Carolina, resulting in permanent physical injuries and psychological abuse.

10. More specifically, Luske alleges that she first met Roy approximately ten years ago and formed a social relationship that turned into a romantic relationship. (Ex. 1 at ¶ 6.)

11. Luske alleges that in mid-December 2021 she and Roy got into a verbal argument at Roy's house and that Roy became upset and punched her in the head repeatedly. (Ex. 1 at ¶¶ 7-8.)

12. Luske alleges that the following day she went to an emergency room and was found to have a subdural hematoma as a result of Roy's assault. (Ex. 1 at ¶ 10.)

13. Luske alleges that despite her injuries, she remained under Roy's psychological control as a result of years-long influence Roy had exerted over her. (Ex. 1 at ¶ 11.)

14. Luske also alleges that after the assault, Roy "confessed that he got so angry that he just wanted to hurt [Luske]." (Ex. 1 at ¶ 12.)

15. Luske's Complaint contains seven claims for relief: 1) Physical Assault; 2) Physical Battery; 3) Intentional/Reckless Infliction of Severe Emotional Distress; 4) Negligent Infliction of Emotional Distress; 5) Gross Negligence; 6) Negligence; and 7) Punitive Damages. See generally Ex. 1.

16. The Complaint's Physical Assault claim alleges that Roy threatened Luske with physical harm by an intentional act or display of force, and more specifically that Roy made a show of force when he struck Luske in the head repeatedly on one or more occasions, causing Luske to have a reasonable apprehension that further harmful and offensive contact with her person was imminent. (Ex. 1 at ¶¶ 22-24.)

17. The Complaint's Physical Battery claim alleges that Roy intentionally caused unwanted physical contact with Luske when he struck her in the head on or about December 21, 2021, which occurred without her consent and offended and harmed her. (Ex. 1 at ¶¶ 27-30.)

18. The Complaint's Intentional/Reckless Infliction of Severe Emotional Distress claim alleges that Roy psychologically abused Luske, culminating in a physical attack, and that

3

this conduct was extreme and outrageous, exceeding all bounds usually tolerated by decent society. (Ex. 1 at ¶¶ 33-34.)

19. Said claim further alleges that Roy's conduct was intended to cause or recklessly indifferent to the likelihood it would cause severe emotional distress to Luske, and that it did cause Luske permanent damage and severe emotional distress. (Ex. 1 at ¶¶ 35-37.)

20. The Complaint's Negligent Infliction of Emotional Distress claim alleges that Roy knew or should have known, and that it was reasonably foreseeable, that his conduct described in paragraphs 33 through 37 of the Complaint would cause Luske severe emotional distress. (Ex. 1 at ¶ 40.)

21. Said claim further alleges that Roy's actions towards Luske were negligent and did cause Luske severe emotional distress. (Ex. 1 at ¶ 41.)

22. The Complaint's Gross Negligence claim alleges that Roy owed Luske a duty of reasonable care, as an adult man and romantic partner interacting with an adult woman, his girlfriend. (Ex. 1 at ¶ 44.)

23. Said claim further alleges that Roy abused Luske psychologically and physically, breaching the standard of care owed to Luske by violating at least N.C. Gen. Stat. § 14-32.4(a). (Ex. 1 at ¶¶ 45-46.)

24. Said claim further alleges that Roy's actions were grossly negligent and/or committed with reckless disregard for Jennifer's rights. (Ex. 1 at ¶ 47.)

25. The Complaint's Negligence claim makes the same allegations described in paragraphs 20 and 21 herein, and that Roy's actions negligent in that he breached the standard of care owed to Luske. (Ex. 1 at ¶¶ 51-53.)

26. The Complaint's Punitive Damages claim alleges that Roy's conduct described in

the preceding paragraphs of the Complaint was willful, wanton, intentional, malicious, and done with complete and reckless disregard for Plaintiff's rights, and that Roy is liable for punitive damages for his assault, battery, and infliction of emotional distress. (Ex. 1 at ¶¶ 56-57.)

**Policies**

27. Cincinnati issued Homeowners Enhancement Coverage Policy No. H02 0885547 with a policy period of April 26, 2021 to April 26, 2022 to Roy as the only Named Insured (the "Homeowners Policy"). A true and accurate certified copy of the Homeowners Policy is attached as Exhibit 2.

28. Cincinnati issued Personal Umbrella Liability Policy No. U01 0885547 with a policy period of April 26, 2021 to April 26, 2022 to Roy as the only Named Insured (the "Umbrella Policy"). A true and accurate certified copy of the Umbrella Policy is attached as Exhibit 3.

29. The Homeowners Policy provides personal liability coverage for bodily injury to others with a limit of $1,000,000 per occurrence.

30. The Umbrella Policy provides personal liability coverage for bodily injury to others with a limit of $1,000,000 per occurrence

31. **A. Coverage E – Personal Liability** of **SECTION II – LIABILITY COVERAGES** of the Homeowners Policy states in part the following regarding the coverage provided by it:

> If a claim is made or a suit is brought against an "insured" for damages because of:
>
> **1.** "Bodily injury" or "property damage" caused by an "occurrence"; or
>
> **2.** "Personal injury" resulting from an offense defined under "personal injury";
>
> to which this coverage applies, we will:

3. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

4. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" or offense has been exhausted by payment of a judgment or settlement.

32. **E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others** of the Homeowners Policy's **SECTION II – EXCLUSIONS** contains the following exclusions applicable to this matter:

   1. **Expected or Intended Injury**

      a. "Bodily injury" or "property damage" which is intended by or which may reasonably be expected to result from the:

         **(1)** Intentional acts or omissions; or

         **(2)** Criminal acts or omissions; of one or more "insured" persons.

      b. This exclusion applies even if:

         **(1)** The "insured" persons lack the mental capacity to govern their own conduct;

         **(2)** The "bodily injury" or "property damage" is of a different kind, quality or degree than intended or reasonably expected; or

         **(3)** The "bodily injury" or "property damage" is sustained by a different person, entity or property than initially intended or reasonably expected.

      This exclusion applies regardless of whether or not an "insured" person is actually charged with, or convicted of, a crime.

                                             ***

   7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse;

33. **SECTION II – CONDITIONS** of the Homeowners Policy states in part the following regarding Cincinnati's limits of liability, "occurrence", and the policy period:

**A.     Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from:
1. Any one "occurrence" of "bodily injury" or "property damage"; or

2. Any one offense of "personal injury";

will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made, persons injured or suits brought.

1. **"Bodily Injury" And "Property Damage"**

   All "bodily injury" and "property damage" resulting from:

   a. Any one accident; or

   b. From continuous or repeated exposure to substantially the same general harmful conditions; shall be considered to be the result of one "occurrence"; and

*** 

**I.     Policy Period**

This policy applies only to:

1. Bodily injury";

2. "Property damage"; or

3. "Personal injury"

which occurs during the policy period.

34. The Homeowners Policy's **DEFINITIONS** section includes the following relevant defined terms:

7

3. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

***

11. "Occurrence" means:

   An accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage".

35. **SECTION I – COVERAGE** of the Umbrella Policy states in part the following regarding the coverage provided by it:

   A. **Insuring Agreement**

   1. "We" will provide the insurance described in this policy. "You" agree to pay the premium and to comply with the provisions and conditions of this policy.

   2. "We" will pay on behalf of the "insured" the "ultimate net loss" which the "insured" is legally obligated to pay as damages for "bodily injury", "personal injury" or "property damage" arising out of an "occurrence" to which this insurance applies:

      a. Which is in excess of the "underlying insurance"; or

      b. Which is either excluded or not covered by "underlying insurance".

   3. This insurance applies to "bodily injury", "personal injury" and "property damage" only if:

      a. The "bodily injury", "personal injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      b. The "bodily injury" or "property damage" occurs during the "coverage term"; or

      c. The "personal injury" results from an "occurrence" that takes place during the "coverage term".

8

36. **B. Exclusions** of the Umbrella Policy's **SECTION I – COVERAGE** contains the following applicable exclusions:

   1. **Abuse** [As modified by **AMENDATORY ENDORSEMENT - NORTH CAROLINA**]

      "Bodily injury", "personal injury" or "property damage", or a claim for negligent supervision or negligent entrustment based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any actual, alleged or threatened act or acts of abuse, molestation, misconduct or harassment.

      However, this exclusion will not apply to "bodily injury", "personal injury" or "property damage" arising from corporal punishment administered by an "insured", provided such liability is covered by valid and collectible "underlying insurance" as listed in Schedule **A** - Schedule of Underlying Insurance, and then only for such hazards for which coverage is afforded by such "underlying insurance", unless otherwise excluded by this policy

      ***

   11. **Expected or Intended Injury**

      **a.** "Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of an "insured" or which is in fact expected or intended by an "insured" even if the injury or damage:

      **(1)** Is of a different degree or type than actually intended or expected; or

      **(2)** Is sustained by a different person, entity, real or personal property, than initially expected or intended.

      **b.** However, this exclusion does not apply to;

      **(1)** "Bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property; or

      **(2)** "Bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to prevent or eliminate danger in the operation of "automobiles", "recreational motor vehicles" or watercraft.

9

37. The Umbrella Policy's **SECTION II - LIMIT OF INSURANCE**, as modified by **AMENDATORY ENDORSEMENT - NORTH CAROLINA**, states in part the following:

**LIMIT OF INSURANCE** is replaced by the following:

1. The Limit of Insurance as shown in the Declarations and the rules below fix the most "we" will pay regardless of the number of:
   a. "Insureds";
   b. Offenses;
   c. Claims made or "suits" brought;
   d. Persons injured; or
   e. Persons or organizations making claims or bringing "suits".

2. The each "bodily injury" or "property damage" occurrence limit is the most "we" will pay for the "ultimate net loss".
   a. In excess of the applicable limits of "underlying insurance"; or
   b. If an "occurrence" is not covered by "underlying insurance", but is covered by the terms and condition of this policy,

   arising out of any one "occurrence".

38. The Umbrella Policy's **DEFINITIONS** section includes the following relevant defined terms:

"Bodily injury" means bodily harm, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury sustained by a person, including care, loss of services or death arising out of any of these at any time.

***

"Coverage term" means the following individual increment, or if a multiyear Policy Period, increments, of time, which comprise the Policy Period, as stated in the Declarations, of this policy:

1. The year commencing on the effective date, as stated in the Declarations (i.e., From), of this policy at 12:01 AM standard time at "your" mailing address shown in the Declarations, and if a multiyear Policy Period, each consecutive annual period thereafter,

10

or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at "your" mailing address shown in the Declarations on the earlier of:

  **a.** The day the Policy Period shown in the Declarations ends; or

  **b.** The day the policy is terminated or cancelled.

 **2.** However, if after the issuance of this policy, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

"Occurrence" means:

 **1.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage"; or

 **2.** An offense that results in "personal injury".

All damages arising from the same accident, continuous or repeated exposure to substantially the same general conditions, act or offense shall be deemed to arise from one "occurrence" regardless of:

  **a.** The frequency of repetition;

  **b.** The number or kind of media used; or

  **c.** The number of claimants.

"Underlying insurance" means the policies of insurance listed in Schedule **A** - Schedule of Underlying Insurance and the insurance available to the "insured" under all other insurance policies applicable to the "occurrence". "Underlying insurance" also includes any type of self-insurance or alternative method by which the "insured" arranges for funding of legal liabilities which would also be insured under this policy.

"Underlying limit" means the total of the applicable limits of all "underlying insurance" and any other insurance, less the amount, if any, by which the applicable limit of the applicable policy listed in the Schedule of Underlying Insurance has been reduced solely by payment of loss for;

 **1.** "Bodily injury" or "property damage" which occurs during the "coverage term"; or

11

2. "Personal injury" resulting from an "occurrence" that takes place during the "coverage term".

39. Cincinnati seeks a declaration that Roy is not entitled to a defense in the Underlying Lawsuit under either the Homeowners Policy or the Umbrella Policy, and a declaration that no indemnity is owed under either the Homeowners Policy or the Umbrella Policy for any judgment that may be entered against Roy in the Underlying Lawsuit.

### **COUNT I – DECLARATORY JUDGMENT (Defense of Roy)**

40. Cincinnati incorporates by reference paragraphs 1 through 39 above as if fully restated herein.

41. An actual controversy exists between Cincinnati and Roy concerning whether Cincinnati owes a defense Roy either the Homeowners Policy or the Umbrella Policy with respect to the Underlying Lawsuit. There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

42. Cincinnati seeks a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Roy is not entitled to a defense under the Homeowners Policy or Umbrella Policy with respect to the Underlying Lawsuit.

43. Cincinnati is entitled to this declaratory judgment because the Underlying Lawsuit's Complaint does not allege an "occurrence" as defined in either policy.

44. An "occurrence" as defined in both policies is an accident, and the Complaint describes an intentional physical assault and intentional ongoing psychological abuse. *See, e.g.*, (Ex. 1 at ¶¶ 8, 11-12.)

45. Even if an "occurrence" is alleged, Luske's claims are still excluded by the expected or intended injury and abuse exclusions contained in both policies.

46. Furthermore, to the extent the Complaint's two emotional distress claims and Luske's alleged psychological abuse qualify as an "occurrence" that is not excluded by these exclusions, they do not constitute "bodily injury" as defined in the Homeowners Policy and no defense of Roy is owed for any such claim under the Homeowners Policy.

47. Last, to the extent Luske's alleged psychological abuse and/or emotional distress began prior to the start of first policy period of the Homeowners Policy or the first "coverage term" of the Umbrella Policy, no defense of Roy is owed under the respective policy as Luske's "bodily injury", if any, did not occur during the policy period or "coverage term" of the policies.

## COUNT II – DECLARATORY JUDGMENT (Indemnity)

48. Cincinnati incorporates by reference paragraphs 1 through 46 above as if fully restated herein.

49. An actual controversy exists between Cincinnati and Roy concerning whether Cincinnati owes indemnity for any judgment entered against Roy in Underlying Lawsuit under either the Homeowners Policy or the Umbrella Policy. There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

50. Cincinnati seeks a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Roy is not entitled indemnity under the Homeowners Policy or Umbrella Policy for any judgment entered against him in the Underlying Lawsuit.

51. Cincinnati is entitled to this declaratory judgment because the Underlying Lawsuit's Complaint does not allege an "occurrence" as defined in either policy.

52. An "occurrence" as defined in both policies means an accident, and the Complaint describes an intentional physical assault and intentional ongoing psychological abuse. *See, e.g.*, (Ex. 1 at ¶¶ 8, 11-12.)

53. Even if an "occurrence" is alleged, Luske's claims are still excluded by the expected or intended injury and abuse exclusions contained in both policies.

54. To the extent the Complaint's two emotional distress claims and Luske's alleged psychological abuse qualify as an "occurrence" that is not excluded by these exclusions, they do not constitute "bodily injury" as defined in the Homeowners Policy and no indemnity is owed for them under the Homeowners Policy.

55. The Complaint's punitive damage claim does not constitute "bodily injury" under the Homeowners Policy or Umbrella Policy and no indemnity is owed for any judgment entered on it under either policy.

56. Furthermore, to the extent Luske's alleged psychological abuse and/or emotional distress began prior to the start of first policy period of the Homeowners Policy or the first "coverage term" of the Umbrella Policy, no indemnity is owed under the respective policy as Luske's "bodily injury", if any, did not occur during the policy period or "coverage term" of the policies.

57. Last, to the extent any "occurrence" resulting in "bodily injury" during the policy period or "coverage term" of the policies that is not excluded is alleged in the Underlying Lawsuit's Complaint, only one "occurrence" has been alleged, subject to the policy or policies' per occurrence limit stated in their declarations.

WHEREFORE, Cincinnati respectfully requests that this Court:

1. Declare that Cincinnati has no obligation to provide a defense to Roy in the Underlying Lawsuit under either the Homeowners Policy or the Umbrella Policy; and that Cincinnati owes no indemnity under either the Homeowners Policy or the Umbrella Policy for any judgment entered against Roy in the Underlying Lawsuit.

14

2. Award such other and further relief as the Court deems just and proper.

**Respectfully Submitted,**

**CINCINNATI ADVANCED INSURANCE COMPANY**

**By:** /s/ John B. Mumford, Jr.
**Counsel**

John B. Mumford, Jr. (VSB No. 38764)
HANCOCK, DANIEL & JOHNSON, P.C.
4701 Cox Road, Suite 400
Glen Allen, Virginia 23060
Telephone: (804) 967-9604
Facsimile: (804) 967-9888
jmumford@hancockdaniel.com
*Counsel for The Cincinnati Insurance Company*